IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| PAYLESS CASHWAYS, INC., | ) Case No. 01-42643 |
| | ) |
| Debtor. | ) |

MEMORANDUM OPINION

KPMG L.L.P. (KPMG) has filed its First and Final Application for Allowance of Compensation and Reimbursement of Expenses (the Application) in this Chapter 11 bankruptcy case. Various parties objected to the Application. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I grant the Application in part, sustain the objections in part, and allow KPMG fees in the amount of $525,798.50, and expenses in the amount of $68,011.20.

FACTUAL BACKGROUND

The relevant facts are as follows. On June 4, 2001, debtor Payless Cashways, Inc. (Payless) filed a Chapter 11 bankruptcy petition, and on June 29, 2001, this Court entered an Order authorizing Payless to retain KPMG as its accountants, auditors, and tax and compensation advisors. On August 28, 2001, Payless informed the Court that its

reorganization efforts had failed and that it would begin liquidating all of its assets. On September 10, 2001, the Court approved the appointment of Silverman Consulting, Inc. as the Chapter 11 trustee. On November 2, 2001, KMPG filed the Application seeking $554,798.50 in compensation and $68,936.20 in expenses for the services it provided to Payless between June 4, 2001, and August 31, 2001. Congress Financial Corporation (Congress), the Official Committee of Unsecured Creditors (the Committee), and the UST objected to the Application. On December 18, 2001, this Court held a hearing. The only disputed issues in this case are whether the fees and expenses contained in the Application are reasonable and whether the efforts of KMPG benefitted the estate. No one disputes that KMPG actually performed the work and that it was necessary.

## DISCUSSION

One of the Committee's objections is related to the fact that KMPG styled its Application a "Final Application," when in fact it is for services only through August 31, 2001. In its response, KMPG clarified that the Application only covers compensation and expenses through August 31, 2001, and that it is not a final application for all of the services that have been or will be performed in this case.  I will, therefore, treat KPMG's Application as being one for interim allowance. As with all interim applications, it is subject to review at such time as the Final Application is submitted.[1] Any such review, however,

---

[1] 11 U.S.C. §§ 330(a)(5) and 331.

2

must be pursuant to the standards set out in this Memorandum Opinion.

The Bankruptcy Code (the Code) authorizes the employment of professional persons to assist the trustee, or, as in this case at its inception, the debtor-in-possession, in performing its duties:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.[2]

The Code also both authorizes compensation for these professionals and establishes the standards for awarding that compensation:

> (a) (1) After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—
>
> > (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
> >
> > (B) reimbursement for actual, necessary expenses.
>
> (2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.
>
> (3) (A) In determining the amount of reasonable compensation to be

---

[2] 11 U.S.C. § 327(a).

3

awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

    (A)    the time spent on such services;

    (B)    the rates charged for such services;

    (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

    (E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)    (A)    Except as provided in subparagraph (B), the court shall not allow compensation for—

        (i)    unnecessary duplication of services; or

        (ii)    services that were not—

            (I)    reasonably likely to benefit the debtor's estate; or

            (II)    necessary to the administration of the case.

. . .

(6)    Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the

application.[3]

I note at the outset that KPMG is a national accounting firm. Thomas D. Bibby, the Partner in KPMG's Southwest Region Financial Advisory Services Practice, testified that the rates charged by KPMG are national rates. In other words, his firm charges the same rate for the same services, regardless of the location of the client.

KMPG divided its request for compensation into project categories, listing the total hours and the total fees requested for each category. According to its Application, KMPG performed the following services for Payless: (1) the annual audit: 332.2 hours: $87,872.00; (2) assumption of lease contracts: 16.9 hours: $5,577.00; (3) preference avoidance analysis; 43.5 hours: $17,349.00; (4) bankruptcy accounting and reporting: 35.8 hours: $14,121.00; (5) bankruptcy motions: 209.7 hours: $48,000.00; (6) bankruptcy schedules and statement of financial affairs: 906 hours: $238,160.00; (7) employee retention and severance: 87.2 hours: $33,500.00; (8) tax issues: 179.7 hours: $62,640.00; and travel: 203.1 hours: $24,164.50. No one objected to the compensation requested for the annual audit, the assumption of lease contracts, the employee retention and severance, tax issues, or travel. Those services total $294,042.20, and I will approve the Application as to those services.

The UST argues that KPMG must prove that its services were reasonable and that the work benefitted the estate. KMPG argues, on the other hand that section 330(a)(4)(A)

---

[3] 11 U.S.C. § 330(a).

5

of the Code is in the disjunctive. KPMG, therefore, need only prove that its services were necessary: "[T]he court shall not allow compensation for . . . services that were not reasonably likely to benefit the debtor's estate; or necessary to the administration of the case."[4] Since the parties agree that the services provided were necessary to the estate, I find the UST's argument that KPMG must also prove the services benefitted the estate to be without merit. Even were I to find that KPMG needed to prove both, I find that section 330(a)(3)(C) requires the applicant to prove that the services were necessary to the administration of the case, or beneficial at the time rendered toward the completion of the case.[5] It is undisputed that Payless needed the services of a large and experienced accounting firm. No one denies that KPMG provided quality services to Payless, or that those services contributed toward the orderly administration of the estate. For these reasons, I find that the services were necessary and beneficial.

The UST objects to certain expenses for meals. KPMG seeks reimbursement for 18 meals for a total expense of $1,681.00. The UST points out that the United States government's per diem rate for meals in Kansas City is $42.00. KMPG agreed at the hearing that a reimbursement of $42.00 per day is acceptable, resulting in an allowable expense for meals of $756.00. I, therefore, find that the meal expense of $1,681.00 should

---

[4] 11 U.S.C. § 330(a)(4)(A).

[5] 11 U.S.C. § 330(a)(3)(C).

be reduced by the amount of $925.00 ($1,681 minus $756.00 equals $925.00).

The UST also questions the reimbursement claimed for lodging expenses. KPMG seeks reimbursement for 37 nights lodging for a total of $5,381.00. The UST's objection is related to the inconsistency of the amounts sought for various night's lodging for various professionals. Rather than deal with each individual request, however, I look to the Application for an average cost for lodging. I find the average reimbursement sought is $145.43 per night. Given that KPMG's staff traveled midweek, stayed in downtown hotels, and did not have access to government or week-end rates, that cost is reasonable. I will, therefore, overrule the UST's objection to reimbursement for lodging.

The main thrust of all of the objections is that KPMG did not exercise its discretion to delegate work in the most cost-effective manner in order to minimize cost. As a result, the parties contend the fees are not reasonable. KPMG used one Principal, three Partners, a Director, Managers, Senior Associates, Associates, and one intern to provide all the services for which it now seeks reimbursement. The hourly billing rates for these professionals ranged from $550.00 per hour to $100.00 per hour. Based upon the total number of hours billed, 2084.89, the blended hourly rate is $265.64. Given the range of fees charged by this national accounting firm, I find that KPMG did, in fact, delegate a great many tasks to lower echelon employees. KPMG does, however, seek compensation in the amount of $48,000 for 209.7 hours spent preparing the amended mailing matrix. The UST argues that preparing a mailing matrix, while time consuming, is not a difficult task. The

7

UST claims that KPMG should have used clerical employees, or an independent contractor, to perform this service.

KPMG argues that Payless presented it with a list of creditors that was woefully inadequate, and that time was of the essence in getting an Amended Matrix on file so that all creditors could be made aware of the bankruptcy. Payless had in its possession seven crates of returned notices because either the names or addresses on the original matrix prepared by Payless were incorrect. Clearly, having an accurate list of creditors prepared in a timely manner is a necessary task to perform in any bankruptcy case, especially one of the size and complexity of Payless. KPMG also convincingly testified that Payless did not have adequate staff to perform these services in-house at the time the amended matrix was being prepared. KPMG also argued that there is no distinction in the Code between clerical and non-clerical services. It relies on *In re Busy Beaver Building Centers, Inc.*[6] for the premise that section 330 was amended to allow bankruptcy professionals to be compensated at the same level as non-bankruptcy professionals.[7] Moreover, KMPG claims that as long as the services provided were actual and necessary, it is not relevant whether a professional or paraprofessional performed them.[8] I agree. But I do find that KPMG could have used paraprofessionals, who bill at a substantially lower rate, to prepare a great deal

---

[6] 19 F.3d 833 (3rd Cir. 1994).

[7] *Id.* at 847.

[8] *Id.* at 848.

of the mailing matrix, or it could have suggested that the work be hired out to a firm with experience in preparing matrixes. I, therefore, find that $20,000 is a reasonable request for compensation for preparing an accurate mailing matrix, and I will reduce the amount sought, $48,000, by $28,000.

The UST claims that KPMG did not need to spend 906 hours preparing the bankruptcy schedules, and that it did not need to use a Partner, a Director, and two Managers for these tasks. Given the overall blended rate of $265.00, I find that KPMG appropriately delegated these tasks. Courts have consistently looked to the marketplace to guide their determination as to what is reasonable.[9] It is undisputed that KPMG is a national accounting firm. Payless determined, prior to filing this petition, that it needed the expertise of a national accounting firm. It appropriately filed an application to employ KPMG, as required by the Code, and accurately disclosed the fees charged by the KPMG professionals. This Court approved that application, albeit over the reserved objection of the UST. Moreover, the UST stated that he does not dispute that all of the services for

---

[9]*Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S. Ct. 2463, 2470, 105 L. Ed. 2d 299 (1989); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993), *Cert. Denied*,
*City of Cabool v. Casey*, 513 U.S. 932, 115 S. Ct. 325, 130 L. Ed. 2d 285 (1994) (stating that the relevant market may include the national market); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1148 7th Cir. 1993) (stating that a reasonable professional fee should approximate the prevailing market rate in the relevant community). *See also Hendrickson v. Branstad*, 740 F. Supp. 636, 642 (N.D. Iowa 1990), *reversed in part on grounds not relevant here*, 934 F.2d 158 (8th Cir. 1991) (stating that a "national market or a market for a particular legal specialization may provide the appropriate market").

9

which KPMG seeks reimbursement were, in fact, performed and that they were necessary. I, therefore, find that the fees charged in preparing the schedules, with the exception of the fees for preparing the amended mailing matrix, are reasonable.

The UST also objects to the amount of reimbursement KPMG seeks for performing preference analysis, for advising Payless on filing the monthly operating statements, and for preparing the fee application. According to the Application, KPMG seeks fees of $17,349 for 43.5 hours work in performing an analysis of preferential payments and $14,121 for 35.8 hours work preparing the monthly operating reports. The UST argues that less skilled professionals could have performed these two tasks at a substantial savings to the estate. I disagree. Preference analysis is a complicated task. If done correctly, it can minimize future litigation and provide a substantial benefit to the estate. Likewise, properly prepared monthly operating reports serve to keep all parties-in-interest, including the Court, advised of a debtor's activities while in Chapter 11. I find that the fees for these services are reasonable.

As to the cost to prepare the fee application, KPMG points out that the cost of $22,415.00 to prepare a fee application in the total amount of $553,798.50 is four percent and is justified by the efforts required. While there is no clear guidance in this area, Courts have approved reimbursement for time spent preparing fee application in excess of nine percent. As one court stated:

[T]he court feels compelled to award a reasonable amount for time spent

10

    preparing the applications. . . .Winthrop could reasonably have been expected to spend no more than ten percent of its total time on the case preparing and defending its portions of the applications.[10]

In *In re By-Rite Oil Company*,[11] the court set a five percent limitation on reimbursement for preparation of a fee application.[12] In setting such a limitation the Court stated, "this five percent limitation does not approach the amount that would constitute a reasonable fee for such time if full compensation were allowed."[13] Given these parameters, I will approve the request for $22,415.00 for preparation of the fee application.

    In its objection, Congress argues that "[i]n light of the short-lived reorganization phase of this proceeding, it is questionable what benefit debtor derived from KPMG's services."[14] This argument misses the mark. Unlike the investment bankers, who were hired for the express purpose of helping Payless devise a strategy to come out of Chapter 11, KPMG was hired to provide accounting services, which were necessary whether Payless emerged from Chapter 11 or, as is the case, dies there. There is no real dispute that the various categories of services provided by KPMG were necessary to the processing of the case, and were, therefore, a benefit to the estate and its creditors. Payless needed to file

---

[10]*North Carolina v. American Freight System, Inc. (In re American Freight System, Inc.)*, 1997 WL 309123 (D. Kan. May 6, 1997).

[11]87 B.R. 905, (Bankr. E.D. Mich. 1988).

[12]*Id.* at 917.

[13]*Id.*

[14]Doc. #1019, filed November 16, 2001.

11

accurate schedules, to receive accurate tax advice, and to pursue preferences whether the case resulted in confirmation of a Chapter 11 Plan or not. At the hearing, Congress argued that KPMG should have realized early on that the case was going to crater, and should have used less people and lower level people to do the tasks it was called upon to do. In all cases, however, professionals, are expected to do only such work as is necessary, and to do that work in the most efficient manner possible. Doing the work efficiently means pushing the work down to the cheapest professional with the skills to do the work. But that also means utilizing more experienced professionals to perform tasks which require their expertise. Sometimes it is more efficient to utilize a higher paid person who has dealt with the problem before than to use a cheaper person to reinvent the wheel. As I have found, preparation of the amended matrix, could have been performed by employees with less experience. But other tasks, such as preparation of a template for preference analysis, the editing of bills, and consultation regarding pension issues, were more efficiently performed by professionals who charge higher hourly rates.

In sum, I find that the estate and its creditors did derive substantial benefit from the services provided by KPMG, and that those services were necessary to the prompt administration of the estate. I further find that, with the exception of preparing the amended mailing matrix and the food charges, KPMG provided those services in as efficient a manner as could be reasonably expected under the circumstances. As such, I will approve the Application on an interim basis, and will allow fees in the amount of $525,798.50 and

expenses in the amount of $68,011.20.

An Order in accordance with this Memorandum Opinion will be entered this date.


/s/ Arthur B. Federman
Chief Bankruptcy Judge


Date: January 24, 2002


KATHRYN BUSSING TO SERVE PARTIES NOT RECEIVING ELECTRONIC NOTICE